A. R. HEMPHILL, Appellant, v. CITIZENS STATE BANK OF EARLHAM et al., Appellees.

**CONSPIRACY:    Elements—Corporation As Party.**    Manifestly, a corporation can enter into a conspiracy only through one of its officers.

**PRINCIPAL AND AGENT:    Fraud—Accounting.**    Evidence held wholly insufficient to establish fraud by an agent in the purchase of notes for the principal.

Headnote 1:    12 C. J. p. 610.    Headnote 2:    2 C. J. p. 952.

*Appeal from Madison District Court.*—W. G. VANDER PLOEG, Judge.

FEBRUARY 17, 1925.

SUIT in equity for an accounting. After a hearing on the merits, there was a decree dismissing the petition, and the plaintiff appeals.—*Affirmed.*

*G. W. Weatherly* and *A. W. & Phil R. Wilkinson,* for appellant.

*J. W. Rhodes* and *John A. & W. T. Guiher,* for appellees.

EVANS, J.—By his original petition filed, the plaintiff averred that, from March, 1918, to March, 1922, he had deposited sundry sums of money with the defendant bank and with the defendant Hill, as its president and general manager; that such sums so deposited amounted to $9,000, and were unaccounted for. He prayed for judgment for $9,000, and for equitable relief. Thereafter, plaintiff filed an amendment, averring that, on March 6, 1919, he was owner of a note executed by one Taylor, for the sum of $7,500, and that he "left said note in the custody and control of said defendants for safe-keeping;" and that the defendants failed to account to the plaintiff for the amount due thereon; and that they have fraudulently "conspired together to cheat, wrong, and defraud this plaintiff;" and that they "wrongfully converted said note to their own use."

1. CONSPIRACY: elements: corporation as party.

Subsequent to the service of the original notice, and before the filing of the petition, the defendant Hill met sudden death, and his administrator was substituted as defendant. It will be more convenient, however, for the purpose of our discussion, that we refer to Hill as the defendant, rather than to his administrator. The two defendants filed separate answers. By his answer, Hill averred that, for many years, beginning about July, 1915, he had acted in his individual capacity, as an agent for the plaintiff, to invest funds for him and to procure securities; and that, during all the years from 1915 to 1923, he exercised such agency for the plaintiff; and that his purported acts as such were all authorized by the plaintiff; that, on the 6th of March, he did, as such agent, purchase for plaintiff the Taylor note for $7,500, and paid therefor out of the funds then on deposit with the defendant bank; that, on November 12, 1919, three

days prior to the maturity of the Taylor note, he purchased for
the plaintiff two certain notes amounting to $7,000, executed by
J. F. Martens, and one for $500, executed by Diggs; and that
he paid for the same out of the proceeds of the Taylor note;
that he made such purchase for the plaintiff for the purpose of
keeping the plaintiff's funds invested; and that his acts were
at all times known to the plaintiff.  He denies that he ever failed
to account, and denies all allegations of fraud and conspiracy.
By its answer the defendant bank denies all allegations of fraud
and conspiracy, and denies that it ever held the Taylor note as
a custodian, for safe-keeping; it denies any failure of accounting
to the plaintiff, and in substance denies that it had anything to
do with the Taylor note while it was the property of the plain-
tiff; and it also avers that it made and delivered repeated state-
ments to the plaintiff of his account as a depositor, and that it
had full settlements with him, from time to time, on all matters
of business between it and the plaintiff.

It appears from the evidence that the bank repurchased
the Taylor note on November 12, 1919, and that it was entered
upon its discount register.  The trial court found in its decree
that the defendant Hill used the proceeds of the Taylor note
thus acquired, in the purchase of the Martens and Diggs notes.
It appears also that the Martens notes were dated on November
6, 1919, and were for $3,000 and $4,000, respectively, and due
in 9 months and 12 months, respectively.

The argument of plaintiff, as appellant, is predicated upon
the theory that Hill, as manager of the bank, fraudulently con-
verted the Taylor note and substituted therefor the Martens
notes, and that the Martens notes were worthless; whereas the
Taylor note was good: and this is the entire objective of the
petition.  If this predicate were sustained by the record, there
could be no doubt about the proper conclusion.

The argument for the defendants, as appellees, is predicated
upon the theory that Hill transacted this business for the plain-
tiff in his individual capacity only; that Hill carried on a
private business, involving farm loans and the making of in-
vestments for clients; that he had done so for many years, not-
withstanding that he was president and general manager of the
defendant bank; that he had done so for the plaintiff for several

years, and that such business of plaintiff's was exclusively with Hill; that the profits of such business inured wholly to Hill, and the bank had no interest therein or control thereof; that the Martens notes were purchased by Hill to take the place of the Taylor note, which was to fall due on November 15th; that such transaction was within his authority as agent; and that it involved no fraud whatever.

The trial court found that the business was transacted by Hill in his individual capacity; that Hill acted within his authority, and without fraud. The foregoing will sufficiently indicate the definite points of conflict between the parties.

Hill was the president and the general manager and majority stockholder of the defendant bank. Williams was its cashier, and Jackson its assistant cashier. He did not become such president until October 1, 1918. Prior to that time, he had been cashier only; and for several years prior to his incumbency as president, he had carried on a private business of the nature already indicated. During these prior years, he had acted as agent for the plaintiff in precisely the same manner as he had acted concerning the Taylor and Martens notes. This is a partial explanation of what might otherwise appear to be a very forbidding dual relation sustained by Hill toward the public. Needless to say that, if any patron were deceived or misled to his injury by the maintenance of such dual relation, he would be entitled to full relief against the results of such an error.

If the authority of Hill to invest the proceeds of the Taylor note in the Martens and Diggs notes had been questioned on or about November 12, 1919, or within one year or more thereafter, there could have been no litigation. The lawsuit has been made by after events. The Martens notes were given in the purchase of certain corporation stock in the Selway Steel Post Corporation. The stock was sold to Martens by his own brother, as agent of the corporation. Sometime in 1921, a receiver was appointed for the Selway Steel Post Corporation by the Polk County district court, and Martens awoke to the fact that he had been defrauded.

The Martens notes were drawn payable to the order of "myself," and were duly indorsed by the maker. In that form, they passed as negotiable paper by delivery. Martens appears

to have executed at first a series of three notes, of $3,000, $3,000, and $4,000, due in 6 months, 9 months, and 12 months, respectively, at 6 per cent interest. Hill appears to have acquired these notes. The defendant bank took one of them, which was due in 6 months. The other two were taken by Hill for the plaintiff, and were kept by Hill in plaintiff's envelope, with other notes of plaintiff's, including the Diggs note, purchased at or about the same time. The Diggs note was subsequently paid, and no controversy is made thereon.

It further appears that Martens purchased $15,000 additional stock, for which he gave his notes. It does not appear that these notes were ever negotiated. The plaintiff put in evidence a decree of the district court of Polk County in the receivership proceedings of the Selway Steel Post Corporation, which adjudicated the right of Martens to rescind his purchase, and required the corporation to return to Martens all his notes which the corporation still held. By this same decree, judgment was entered against the corporation for Martens for $10,000, to cover the notes which had been negotiated.

Shortly prior to March 1, 1923, Hill sold his stock in the bank to Williams and Jackson. Shortly thereafter, the plaintiff called at the bank, in the absence of Hill, and asked Williams for his notes. Williams obtained them from the plaintiff's envelope, contained among the private files of Hill. At that time, plaintiff took copies of the notes. *Williams* testified that plaintiff asked for the *Martens* notes. This is denied by plaintiff. Concededly, the plaintiff said nothing about the Taylor note at that time. Some days later, he obtained the original notes. He took these to his attorney, who informed him that they were "not worth the paper upon which they were written." Thereupon they were tendered back, both to Hill and to the bank, and such tender was coupled with a demand for the Taylor note. It does not appear that the Taylor note had ever been mentioned before, to Williams, nor had there been any controversy or question over it between plaintiff and Hill, prior to this tender.

It will be noted that the plaintiff claims recovery from both defendants. As a basis for joint recovery, he pleads a conspiracy to defraud, as between the two defendants. If the bank

entered into a conspiracy, it must have done so
through some officer.  No officer other than Hill
had anything to do with the transaction.  In
order to constitute a conspiracy, therefore, between Hill and the
bank, Hill must have represented the bank, as well as himself, in
such conspiracy.  Sufficient to say that no conspiracy is shown.
Still, joint liability could be predicated upon the fraud of Hill,
if he was acting for the bank, as the plaintiff contends.  As
between the two defendants, Hill should be deemed primarily
liable, if liability be found against either.  Hill's own defense
recognizes that fact.  We direct our first inquiry, therefore, to
the question of Hill's liability, regardless of whether he acted
as individual or as representative of the bank.  In investing the
funds of the plaintiff in the purchase of paper, Hill did not
thereby become a guarantor of the paper.  However, his relation
to the plaintiff was one of confidence in a high degree, and he
owed to the plaintiff a duty of absolute good faith.  If he know-
ingly invested the funds of the plaintiff in worthless paper, he
is liable, and is so liable regardless of whether the funds were
the proceeds of the Taylor note or not.  On the other hand, if
he made the investment in good paper, such an investment was
wholly consistent with the course of dealing between Hill and
the plaintiff for several years.  His conduct must be justified or
condemned, as the case may be, by the facts and circumstances
existing on November 12, 1919, and not by subsequent events for
which he was not responsible.  The mistake in plaintiff's argu-
ment is that it has ignored the chronology of the case.  The
charge of conspiracy and fraud and of the worthlessness of the
Martens notes is predicated upon these after events, which
could give no legitimate coloring to the conduct of Hill on No-
vember 12, 1919.  True, Hill refused to take the notes from
Hemphill; but this refusal was in 1923, and could not be fraudu-
lent unless there was fraud on November 12, 1919, in the pur-
chase of the notes for Hemphill.

It is argued with emphasis that the Martens notes were
"worthless."  By this expression we ordinarily understand that
the maker was insolvent.  There is no proof in this record that
Martens was insolvent.  The plaintiff testified that he was *ad-
vised* by his attorney that the notes were not worth the paper

*2. PRINCIPAL AND
AGENT: fraud:
accounting.*

on which they were written.   The attorney testified *that he so advised the plaintiff.*   Neither of them testified to the worthlessness of the paper in any other manner.   Needless to say that such evidence did not prove either that the maker was insolvent or that the paper was worthless because of supposed defenses. The decree of the district court of Polk County was put in evidence, for the purpose of showing an adjudication, as between Martens and the corporation, that the notes had been obtained by fraud.   It is manifest, therefore, that the worthlessness of the paper was predicated upon the belief that the paper was subject to defenses.   But the adjudication thus put in evidence had no effect whatever upon the rights of the plaintiff, as an innocent purchaser of the notes.   There is no claim in the record that any defense was known or believed to exist on November 12, 1919, even on the part of Martens.   Martens was a witness for the plaintiff.   He testified, in substance, that he knew no defense at that time, or for some time thereafter.   He paid the first note falling due.   His testimony showed him to be a man of large property, moderately incumbered.   We are required to concentrate our attention upon the date of the purchase, and to judge Hill's conduct by the facts and circumstances surrounding him on that date.   The notes bore 6 per cent interest.   That was just the rate of interest which the plaintiff exacted.   That had been indicated in other loans.   They were negotiable in form.   The maker was good.   So far as disclosed by the record, the note was as choice as the Taylor note. There was no fact known at that time which would have induced or suggested to plaintiff to reject the Martens notes.   We are compelled to say, therefore, that there is no evidence of fraud or lack of good faith on the part of Hill in making the investment.   Whether there was any negligence or failure of diligence on his part in pressing the collection of these notes when they were due is a question not within any issue presented by the petition, as was pointed out by the trial judge in his findings. This action is predicated upon fraud and fraudulent conversion. Inferentially, perhaps, it involves also a charge of abuse of confidential relations and an unauthorized assumption of agency.

We think the conclusion is unavoidable, upon this record, that Hill acted within the scope of the authority usually exer-

cised by him on behalf of plaintiff, and that there was no fraud. We hold further that the evidence in this case wholly fails to show that the Martens notes are worthless. On the contrary, the maker is good, and his defense to the notes is not available against an innocent purchaser. He has already obtained a judgment against the corporation for $10,000, to cover the very contingency of the enforced collection of these notes by an innocent purchaser. He could not have recovered his judgment without a showing that the notes had been negotiated to such purchaser.

The decree entered below is, accordingly,—*Affirmed.*

FAVILLE, C. J., and ARTHUR and ALBERT, JJ., concur.